***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission hereby affirms in part, and reverses in part the Opinion and Award as modified below.
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the deputy commissioner hearing as
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between the Plaintiff and the Defendant-employer.
4. The carrier on the risk for date of injury of May 17, 1994 is Key Risk Management Services. The carrier on the risk for alleged date of injury of December 9, 1999 is The Harleysville Insurance Companies.
5. The Plaintiff sustained an admittedly compensable injury by accident on May 17, 1994 (I.C. File No. 446276).
6. A Form 21, Agreement for Compensation was completed on June 23, 1994 and approved by the Commission on July 18, 1994.
7. The Plaintiff filed a Form 33 Request That Claim be Assigned for Hearing dated May 6, 1997.
8. The case was assigned for mediation and mediation was held on October 9, 1997. A Mediated Settlement Agreement was entered wherein Key Risk would pay weekly temporary partial benefits to Plaintiff from October 9, 1997.
9. Key Risk has paid Plaintiff temporary total disability from June 8, 1994 through December 1, 1996 and temporary partial disability from December 1, 1996 through February 15, 2000.
10. Plaintiff contends that he sustained injury by accident deriving [sic] out of and during the course of his employment with Murrow's Transfers on December 9, 1999 (I.C. File No. 017609).
11. Key Risk filed a Form 61 dated February 2, 2000 in I.C. File No. 446276, denying Plaintiff's workers' compensation claim.
12. Key Risk filed a Form 28B on October 14, 1997 and on March 28, 2000 in I.C. File No. 446276.
13. Key Risk filed a Form 33R in File No. 446276 dated May 19, 2000 and a Revised Form 33R dated August 4, 2000.
14. Plaintiff filed a Form 18 dated February 14, 2000 in I.C. File No. 017609 for the December 9, 1999 injury.
15. Plaintiff filed a Form 33 Request that Claim be Assigned for Hearing on March 22, 2000.
16. Plaintiff filed a Motion for Medical Treatment and Workers' Compensation Benefits on March 23, 2000.
17. Defendants in I.C. File No. 017609 filed a Form 33R dated April 6, 2000.
18. A mediated settlement conference was held on August 7, 2000.
19. Plaintiff filed a Motion in the Cause on August 14, 2000.
20. A response to the Motion in the Cause was filed in I.C. file No. 446276 dated August 14, 2000.
21. Harleysville Insurance Companies filed a response to the Motion in the Cause dated August 14, 2000.
22. The Industrial Commission on August 28, 2000 entered an Order, consolidating file numbers 446276 and 017609 for administrative and hearing purposes.
23. The issues before the Commission are as follows:
 (a) Whether the Plaintiff sustained a new injury by accident during the course and scope of his employment on December 9, 1999?
 (b) Whether the Plaintiff is entitled to temporary total disability benefits from February 15, 2000 to the present?
 (c) What additional workers' compensation benefits, if any, is the Plaintiff entitled to receive?
 (d) Which workers' compensation carrier is liable for the payment of temporary total disability benefits, medical expenses and any other compensation due Plaintiff as a result of his injuries?
 (e) Whether the Plaintiff unjustifiably refused employment with Defendant Murrow's Transfers, Inc., which was suitable to his capacity?
 ***********
Based upon the competent evidence of record, the undersigned makes the following additional
 FINDINGS OF FACT
1. On the date of the deputy commissioner hearing, Plaintiff was 48 years of age. Plaintiff worked for Murrow's Transfer as a truck driver at the time he sustained an admittedly compensable injury to his low back on May 17, 1994, when he slipped while unloading furniture. At that time, Murrow's Transfer was self-insured and its servicing agent was Key Risk Management Services. Plaintiff received indemnity benefits pursuant to a Form 21 approved by the Industrial Commission.
2. On November 13, 1995, Plaintiff underwent a lumbar laminectomy and diskectomy at L5-S1 performed by Dr. O. Dell Curling, a spine specialist. By July 2, 1996, Dr. Curling had determined that Plaintiff had reached a point of maximum medical improvement with ten percent permanent impairment of his back. Dr. Curling did not recommend further surgery, and believed that Plaintiff could return to work full-time as a short-haul truck driver.
3. Plaintiff had follow-up appointments with Dr. Randy Kritzer and Dr. Walter Davis on September 16 and October 3, 1996, respectively, and both doctors agreed with the recommendation for no further surgery. On December 6, 1996, Plaintiff was again seen by Dr. Davis who agreed with Dr. Curling's ten percent permanent impairment rating of Plaintiff's back. Dr. Davis further agreed that Plaintiff was able to continue working as a short-haul driver.
4. Plaintiff was seen by Dr. Paul Long for an independent medical examination on February 24, 1997. Dr. Long concurred with the assessments of Dr. Curling and Dr. Davis regarding Plaintiff's ten percent permanent disability rating and regarding Plaintiff's work capability.
5. On March 3, 1997, Dr. Curling had no further treatment recommendations for Plaintiff's low back. At this time, Plaintiff was working five days per week, 40 hours per week, and was performing well within his restrictions. Dr. Curling assigned permanent restrictions of limited bending, crawling, and twisting with a maximum lifting capacity of 50 pounds, and he restricted Plaintiff to no more than two hours of standing or sitting without a break.
6. At his attorney's request, Plaintiff was examined by Dr. Craig Derian, a neurosurgeon in Durham, who reviewed Plaintiff's records, ordered an MRI, and discussed Plaintiff's surgical options. Plaintiff elected not to have additional surgery.
7. By September 7, 1999, Plaintiff returned to Dr. Curling with complaints of back pain. Dr. Curling prescribed the medications Daypro, an anti-inflammatory, and Neurontin, a seizure medicine, which can be helpful with pain. At Plaintiff's next visit of October 5, 1999, Dr. Curling noted that these medications seemed to be alleviating his pain. Plaintiff did not return to see Dr. Curling until June 14, 2000, when he made new complaints.
8. The testimony of Dr. Curling establishes that the medications prescribed were providing Plaintiff relief from his ongoing lower back pain. It appears that such treatment was reasonably helpful to treat Plaintiff's chronic lower back pain.
9. Because Plaintiff did not return to his pre-injury wages when he returned to work as a short-haul truck driver, he remained partially disabled because of the injury of May 17, 1994. Pursuant to mediation agreement, Plaintiff received partial disability compensation until February 15, 2000, a total of 300 weeks from the date of injury on May 17, 1994.
10. Plaintiff testified that on or about December 9, 1999, Plaintiff made a delivery of a desk to a furniture store in King, NC. When he arrived there was no one available to assist him in unloading it. In spite of his restrictions, Plaintiff attempted to unload the desk himself. In the process, the desk began to fall and Plaintiff tried to catch it, in the processing straining his neck and upper back. This is a new incident and injury, distinct from his prior lower back injury.
11. Plaintiff testified that he was experiencing upper back pain from this new injury and that the employer would not refer him to a doctor. Plaintiff did not obtain any medical attention for the alleged injury for over six months. Plaintiff's reasons for not obtaining medical treatment are not credible.
12. Plaintiff saw Dr. Curling on June 14, 2000, at which time he complained of a new injury to his neck. Plaintiff complained of ongoing lower back and neck pain, but acknowledged that he had run out of his pain medications months' prior and had not obtained refills. Dr. Curling examined Plaintiff and determined that any upper back injury was a soft tissue injury, a strain to the cervical or thoracic area. Review of Dr. Curling's notes shows that this assessment was based primarily on subjective complaints of the Plaintiff. Dr. Curling did not believe any further tests, such as x-rays or MRI, were warranted.
13. As a treatment plan, Dr. Curling prescribed Soma, a muscle relaxant for Plaintiff's upper back and continued Plaintiff on Daypro and Neurontin for his lower back. He referred Plaintiff to physical therapy and indicated that Plaintiff should remain out of work pending further evaluation.
14. Plaintiff reported to Dr. Curling that he had been unable to work since December 9, 1999. However, Dr. Curling had not examined him prior to June 14, 2000, and could not confirm that Plaintiff could not work during that period. No other physician had taken Plaintiff out of work during this time. The evidence of record fails to show that Plaintiff was medically unable to work and earn wages in any employment as he claims from December 9, 1999, to June 14, 2000. Plaintiff has the burden to prove disability by competent evidence and has failed to meet this burden for this time period.
15. Plaintiff participated in physical therapy and saw Dr. Curling in follow-up throughout June, July and August 2000. At Plaintiff's August 15 visit, Dr. Curling released Plaintiff to return to work as of August 21, 2000. In addition to the prior restrictions of limited bending and no lifting over 50 pounds, Dr. Curling gave Plaintiff additional restrictions of limited reaching and overhead work as a result of the new cervical injury.
16. The evidence fails to establish that the alleged accident of December 9, 1999, caused any aggravation of Plaintiff's low back condition. Since his initial injury and surgery, Plaintiff has continued to experience intermittent lower back pain, for which ongoing medication is reasonably necessary. However, Plaintiff experienced no worsening of his lower back condition following December 9, 1999, and no additional restrictions were placed on him for the lower back condition.
17. Following Dr. Curling's release for return to work, Plaintiff was offered a job with Murrow's Transfer performing "switch-outs" on August 28, 2000. This position involved hooking a tractor to a trailer and rolling up landing gear, driving the trailer to an assigned location, and unhooking the trailer by rolling down the landing gear. Dr. Curling approved this position within Plaintiff's restrictions. A letter offering the switch-out job was sent to Plaintiff at two different addresses, but Plaintiff never responded to this letter.
18. Plaintiff never attempted to work doing switch-outs despite the fact that it was within the restrictions assigned to him by Dr. Curling. The switch-out job was suitable employment, and Plaintiff's refusal to accept this job was not justified. Plaintiff's reasons for refusing to attempt this employment are not accepted as credible.
19. The carrier for the December 9, 1999, injury is The Harleysville Insurance Companies.
20. The Form 22 filed in this claim reveals that plaintiff made $10,620.75 in the 52 week period prior to his December 9, 1999, injury, which results in an average weekly wage of $204.25 and a compensation rate of $136.17 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. Plaintiff sustained a new injury, consisting of a cervical strain, as the result of a specific traumatic event on December 9, 1999. G.S. § 97-2(6).
2. Plaintiff failed to establish that the December 9, 1999, injury caused disability prior to seeing Dr. Curling on June 14, 2000. Dr. Curling took plaintiff out of work for the period from June 14, 2000 through August 28, 2000, during which period plaintiff was temporarily totally disabled. G.S. § 97-29.
3. Plaintiff was offered reasonable employment within his restrictions on August 28, 2000, which he unjustifiably refused; therefore, his entitlement to total disability benefits is suspended as of that date. G.S. §§ 97-29, 97-32.
4. Plaintiff's cervical strain of December 9, 1999, required reasonably necessary conservative medical treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. In I.C. No. 446276, plaintiff has received all compensation benefits with the conclusion of the payment for temporary partial disability benefits, which expired by operation of law in February 2000. G.S. § 97-30. Plaintiff remains entitled to reasonable and necessary medical care for his lower back injury, through the employer as self-insured and Key Risk Management Services. N.C. Gen. Stat. §§97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. (I.C. No. 446276) Defendant Murrow's Transfer, Inc. in its self-insured capacity shall continue to provide medical compensation for Plaintiff's low back injury of May 17, 1994.
2. (I.C. No. 017609) Plaintiff is entitled to payment of total disability benefits from June 14, 2000, through August 28, 2000, at the rate of $136.17 per week. These benefits have accrued and shall be paid in a lump sum subject to attorney's fees awarded below.
3. Plaintiff's counsel is entitled to recover 25% of the sums awarded in paragraph 2 of this Award. Because these sums have accrued, defendants shall withhold this sum and make payment directly to plaintiff's counsel.
4. Defendants, Murrow's Transfer and The Harleysville Insurance Companies, shall provide reasonable and necessary medical care for plaintiff's cervical strain, subject to the limitations of Section97-25.1.
5. Defendants, Murrow's Transfer and The Harleysville Insurance Companies, shall pay all costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER